311 P.2d 763

**FRANKLIN CUB RIVER PUMPING COM-
PANY, a corporation, Plaintiff-
Appellant,**

v.

**W. D. LE FEVRE, Defendant-Respondent.**

No. 8453.

Supreme Court of Idaho.

May 21, 1957.

———◆———

O. R. Baum, Ruby Y. Brown, Gee &
Hargraves, Pocatello, for appellant.

Merrill & Merrill, Pocatello, P. M. Condie, Preston, for respondent.

KEETON, Chief Justice.

This controversy presents for determination the question of whether defendant (respondent) has by the construction of a dam built in 1954 across what is known as Doney Hollow, interfered with and diminished an appropriation of Cub River water for irrigation purposes owned by plaintiff (appellant).

Doney Hollow is approximately a two-mile long ravine which traverses land owned by defendant, a neighbor named Parkin-

son, and others. Any waters running down Doney Hollow drain into Cub River above a pumping plant of plaintiff used to pump water for irrigation purposes with an alleged capacity of 20 cu. ft. per second, with a priority of 1919.

By a permit dated August 7, 1953, defendant was authorized by the Department of Reclamation to construct a dam on his own land across the Hollow to store 75 acre ft. of water to be pumped onto defendant's land during the dry season. The dam was thereafter constructed, which created a reservoir for storage purposes of approximately 40 acre ft. A tube or outlet was placed through the dam 5 ft. below the top.

By its amended complaint plaintiff alleged that the construction of the dam and the impounding of the water in Doney Hollow interferes with and creates a complete stoppage of water which would otherwise flow into Cub River above its pumping plant. The waters to which plaintiff claims title by prior appropriation are described in the amended complaint or testimony of witnesses as runoff, seepage, return flow, waste water, springs and natural precipitation. Plaintiff claims a prior and superior appropriation and contends and alleges that the dam and reservoir diminished and curtailed the waters of Cub River to which it is entitled.

In an answer defendant denies that any waters to which plaintiff may be entitled rise in said Doney Hollow or reach plaintiff's pumping station and alleges that the dam is constructed on defendant's own land for the purpose of recapturing and impounding waste and runoff water, to which defendant is lawfully entitled; that surplus water, if any, to which plaintiff may be entitled can be transported to the Cub River by means of a bypass constructed around defendant's reservoir.

On issues joined and evidence heard, the court found that the dam so built was constructed pursuant to a permit granted by the Department of Reclamation of the State of Idaho, according to plans furnished by the Soil Conservation Administration of the United States; that the dam and reservoir do not interfere with any rights of plaintiff; that plaintiff failed to prove by any substantial evidence that any quantity or amount of water during the irrigation season from Doney Hollow ever reached plaintiff's point of diversion or pumping station; that there was no appreciable amount of water during the irrigation season that could or would have reached said point of diversion of plaintiff, had the dam not been constructed; that none of the water of Doney Hollow is needed by plaintiff in the non-irrigation season; that the rights of defendant in and to any waters impounded by him are superior to any rights of plaintiff and it has no claim to any of said waters so impounded in the reservoir.

The court on such findings made and entered judgment in favor of defendant,

denied an injunction prayed for, and decreed that plaintiff take nothing, from which judgment this appeal is taken.

In eight assignments of error plaintiff challenges the findings made and various specified parts thereof, claims that the findings are contrary to the law and the weight of the evidence, and the physical facts shown to exist.

A brief summary of the testimony is therefore necessary to determine the issue presented.

Witnesses for the plaintiff testified that the amount of water flowing into Cub River at the Doney Hollow inlet depended on the season and was estimated or measured to be ¼ to 1½ second ft.; that there was ¼ second ft. that flowed into Cub River during the low water season and in dry years, and 1½ second ft. would flow during the highest precipitation; that prior to 1954 there was always some water flowing into Cub River from Doney Hollow; that the construction of the dam completely stopped the flow; that the source of the water claimed by plaintiff was springs, drains, natural precipitation, seepage and return flow.

Relative to the spring water claimed by plaintiff, one if its witnesses testified:

"Q. How much water comes out of those springs in the summer time, in the irrigation season? A. Well, they are pretty well dry right now, and have been the last two seasons."

\* \* \* \* \* \* \* \* \*

"Q. Well, there never has been very much water come out of any of those springs, have there? A. Not a great deal, but there was enough, as I said in the first place, \* \* \* to water sheep and horses and things like that."

Testimony also discloses that there were two sources of supply of water entering Cub River at the Doney Hollow mouth; that below Doney Hollow there was some marsh land, the water supply of which was in part other than water from the Doney Hollow source. The dam does not stop this marsh drainage from flowing into the river.

The testimony of defendant's witnesses is to the general effect that defendant, Parkinson and others had water rights for irrigation purposes along or above Doney Hollow draw, and some seepage and overflow water during the wet season would enter the Hollow from this source; that Parkinson impounded his seepage and surplus water for his own use; that no water entered Doney Hollow sufficient in quantity to ever reach Cub River during the irrigation season; that appellant's water, if any could reach the river by means of a bypass constructed around the dam.

The witness Hatfield qualified as a soil conservationist and engineer, and testified

he was in Doney Hollow in July, 1953, and at other times thereafter before the dam was constructed; that there was a slight amount of water in the Hollow estimated by him to be a fractional part over one miners inch, and doubted if any of this water would enter Cub River. He further testified that during construction a dam two or three ft. high was built to hold what little seepage there was and that in two weeks' time there was very little accumulation of water and in measurement fixed the quantity of water at 6 ft. wide, 80 to 100 ft. long and not exceeding 4 ft. in depth at the deepest place; that the purpose of the permanent dam was to store early waste water for later use.

The witness Fiala, an engineer, inspected the dam site in October 1953, and found a slight amount of water in the Hollow, less than a miner inch, and that this water came from defendant's property.

Witness Barfus, an engineer of the Soil Conservation Service, testified he inspected Doney Hollow fifteen or twenty times commencing in May 1953, and that there was no water going down the Hollow at that time and placed the quantity in the Hollow as seep water sufficient to wet the shoe soles of a person walking across it; that the water was stagnant and not flowing and that what water was in the Hollow came from seeps or springs on defendant's land.

One of the irrigators having a water right testified that no water ran down Doney Hollow during the irrigation season.

Roland Parkinson testified that he had lived adjoining defendant's land all his life and that there had never been sufficient water to carry down the Hollow very far.

Relative to the supply of water from springs the witness testified that one of the springs was dry and the other runs a stream about the size of a pencil.

The witness Woodward has been acquainted with the land for seventeen years and testified there was some seepage from defendant's irrigation ditches that entered the Hollow.

It also sufficiently appears that the reservoir was filled with water during the surplus periods of the spring and at times when it would not be needed or used by plaintiff if not impounded as done.

In the testimony plaintiff did not attempt to segregate the alleged sources of water supply, that is, the quantity alleged to come from springs, seepage or overflow from landowners living above defendant's land, natural precipitation or runoff, and did not establish any specific quantity of water that continuously ran into the river coming from Doney Hollow. The springs claimed to be a source of supply were by the testimony shown to be dry or nonexistent, or of insufficient capacity to furnish any constant or measurable supply of water.

We are of the opinion that the findings of fact made by the trial court are supported by competent, substantial evidence, and are sufficient to sustain the judgment entered, and even though the testimony might be construed to be in conflict, the judgment will not be by this Court disturbed on appeal. Jensen v. Chandler, 77 Idaho 303, Syl. 5, at page 308, 291 P.2d 1116, and cases therein cited.

The seepage or waste water of which defendant was the original appropriator which may in the past, and prior to the construction of the dam, have run down the draw may be recaptured by defendant at any time and put to a beneficial use as was done, and an appropriator is not required to continually let such seepage water escape. Thompson v. Bingham, 78 Idaho 305, 302 P.2d 948; Sebern v. Moore, 44 Idaho 410, 258 P. 176.

It was not established what amount of water plaintiff claims from natural precipitation falling on defendant's land. If any ever escaped to the river the quantity was insignificant. However defendant would own and be entitled to recapture the natural precipitation falling on his own land so long as he applied it to a beneficial use. Sebern v. Moore, supra.

The testimony sufficiently established that the reservoir was filled with water during the flood season when there was a surplus for plaintiff and all irrigators; that plaintiff's water supply was not diminished during the irrigation season by the construction of the dam, or at any other time, or that any water was impounded in the dam to which plaintiff had a prior appropriation. There was no showing that any water flowing from springs located on defendant's land ever reached the river, or that water from the springs had ever been permitted to escape to augment plaintiff's water supply.

Plaintiff contends that by the terms of a contract defendant was required to build a bypass or outlet for plaintiff's water. This contention is based on the minutes of a meeting of the Board of Directors of plaintiff held August 19, 1953. The minutes show that the directors of plaintiff had notice of defendant's application with the State Department of Reclamation to store water in Doney Hollow, and that plans for the storage dam were to be submitted to the Board "relative to the arrangements of a bypass for the company's water".

With respect to the meeting defendant testified that he told the directors that if they owned any water he would bypass it, and said:

"If there is any water to be bypassed, and it is yours, I will by-pass it.

"Q. Did you tell them where you would do it? A. No."

A bypass was constructed around the dam, though not in the location plaintiff

contends it should have been constructed. However, it was not shown that there was any supply of water owned by plaintiff that required bypassing.

What quantity of water plaintiff contends defendant should permit to escape was not established and we are of the opinion that the construction of the dam did not in anywise interfere with plaintiff's irrigation rights. Judgment is affirmed. Costs to respondent.

PORTER, TAYLOR and SMITH, JJ., and MARTIN, District Judge, concur.

McQUADE, J., not participating.